IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WES BLEVINS,

    Plaintiff,

v.

COUNTY OF FRANKLIN, OHIO, *et al.*

    Defendants.

Case No. 2:08-cv-1113
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

Alleging that he received improper care while incarcerated at a Franklin County detention facility, Plaintiff Wes Blevins filed this civil rights action against the County of Franklin, Ohio; the Franklin County Board of Commissioners; Franklin County Sheriff Jim Karnes, in his individual and official capacities; Franklin County Deputy Sheriffs Robert Ellis, Marc Gothard, and Michael Firth, in their individual and official capacities; LPN Stephanie Solis, a nurse employed by Franklin County; and John Does 1-10, unknown persons employed by Franklin County. (Compl. ¶¶ 7–14.)

This matter is before the Court for consideration of Defendants' Motion to Strike Portions of the Affidavits of Patricia Dixon and Wes Blevins (Doc. 51), Plaintiff's Motion for Summary Judgment Against Defendants Franklin County and Marc Gothard (Doc. 30), and Marc Gothard's Cross Motion for Summary Judgment (Doc. 45). For the reasons set forth below, Defendants' motion to strike (Doc. 51) is hereby **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's motion (Doc. 30) is hereby **DENIED**, and Marc Gothard's motion for summary judgment (Doc. 45) is hereby **GRANTED**.

## I. Background

According to Plaintiff's Complaint, he injured his ankle on September 24, 2007 while incarcerated as a pre-trial detainee at the Franklin County Corrections Center II. (Compl. ¶ 15.) He alleges that after he was injured, the responding deputies verbally abused him, secured him to a wheelchair that lacked foot pegs, refused to call an ambulance, purposely ran Plaintiff's leg into a wall several times while pushing the wheelchair, and refused to help Plaintiff get into a van for transport to a hospital. (*Id.* at ¶¶ 22–24.) Plaintiff alleges that, once he got into the van, he was left in handcuffs, was not placed in a seatbelt, and did not have room for his injured ankle. (*Id.* at ¶ 25.) He alleges that Deputy Ellis then crashed the van into another vehicle, causing Plaintiff's foot to slam into the floor of the van. (*Id.* at ¶¶ 26–27.) The deputies allegedly examined the vehicle for damage but "did not check on [Plaintiff's] health, safety, or welfare." (*Id.* at ¶¶ 28–29.) While driving to the hospital, Deputy Gothard allegedly "purposely slammed on the brakes numerous times causing . . . Plaintiff's foot to hit the floor," and when they arrived at the hospital, Deputies Gothard and Ellis allegedly told Plaintiff to hop into the hospital because no wheelchair was available. (*Id.* at ¶¶ 30–31.) When a wheelchair became available, Deputies Gothard and Ellis allegedly "refused to help . . . Plaintiff into the wheelchair," and they allegedly told Plaintiff that they "made sure he was at the bottom of the list of patients to be treated." (*Id.* at ¶¶ 32–33.)

After Plaintiff was released from the hospital, he alleges that Nurse Solis and other John Doe defendants refused to give him the pain medications prescribed by his doctor, taking the medication and failing to respond to Plaintiff's requests to receive his medication. (Compl. ¶¶ 37, 40–42.) He further alleges that, while he recovered from his injury, deputies "harassed and retaliated" against him and Deputy Gothard, Deputy Firth, and other John Doe defendants

2

tainted his food. (*Id.* ¶¶ 38–39.) He alleges generally that "Defendants did not provide . . . Plaintiff with proper care or follow the doctor's orders while [he] was recovering from his injuries." (*Id.* at ¶ 43.)

Plaintiff originally filed this action in the Court of Common Pleas of Franklin County, Ohio on October 20, 2008; the case was removed to this Court on November 24, 2008. (Doc. 2.) Plaintiff alleges claims for assault and battery; intentional infliction of emotional distress; negligent operation of a motor vehicle; intentional, reckless, wanton, malicious, and bad faith conduct; and violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Compl. ¶¶ 44–65.) The claims against the County and the Board of Commissioners were dismissed on January 29, 2009 (Doc. 11); the claims against individual Defendants Karnes, Ellis, Gothard, Firth, and Solis remain pending.

On February 1, 2010, Plaintiff filed a motion for summary judgment against Franklin County and Deputy Gothard as to his First and Eighth Amendment claims. (Doc. 30.) With the reply in support of his motion, Plaintiff submitted his own and Patricia Dixon's affidavits (Doc. 47), portions of which Defendants then moved to strike (Doc. 51). In his memorandum in opposition to Plaintiff's motion for summary judgment, Marc Gothard[1] also filed a Cross Motion for Summary Judgment as to the First and Eighth Amendment claims. (Doc. 45.)

## II. Defendants' Motion to Strike Portions of Plaintiff's and Ms. Dixon's Affidavits

As set forth below, Defendants' Motion to Strike Portions of the Affidavits of Patricia Dixon and Wes Blevins is hereby **GRANTED IN PART** and **DENIED IN PART**.

Federal Rule of Civil Procedure 56(e)(1) requires that affidavits supporting or opposing summary judgment "must be made on personal knowledge, set out facts that would be

---

[1] The caption on this motion indicates that it is jointly filed by Franklin County; however, the county was dismissed as a party on January 29, 2009. (Doc. 11.)

3

admissible in evidence, and show that the affiant is competent to testify on the matters stated." The rule further requires that if an affidavit refers to "a paper or part of a paper . . ., a sworn or certified copy [of that paper] must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1). The Sixth Circuit has held that any portion of an affidavit that does not comply with Rule 56, including statements constituting inadmissible hearsay, cannot be considered on a motion for summary judgment. *See Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969). The Court should also disregard any statements which constitute legal argument rather than setting out fact. *Briggs v. Potter*, 463 F.3d 507, 512 (6th Cir. 2006).

### A. Plaintiff's Affidavit

Defendants move to strike statements contained in Paragraphs 2–8 and 10–12 of Plaintiff's affidavit, contending that the statements "are not based on personal knowledge, are hearsay, are irrelevant, are conclusory or otherwise constitute legal interpretation . . ., and/or refer to documents that are not attached" to the affidavit." (Defs.' Mot. to Strike 2.)

Paragraph 2. Aside from statements which do not appear to be at issue, Paragraph 2 states, "Deputy Gothard and I exchanged words," "Deputy Gothard was verbally abusive to me," and "I was traumatized by the way Deputy Gothard treated me." (Pl.'s Aff. ¶ 2.) Defendants apparently contend that some of these statements constitute inadmissible hearsay. (Defs.' Mot. to Strike 4.) The Court finds otherwise. While the second and third statements above may be conclusive, none of these statements is offered to prove the truth of the matter asserted. In fact, Paragraph 2 does not specify what matters were asserted in Deputy Gothard's statements. The Court finds that these statements set forth facts based on personal knowledge and do not constitute inadmissible hearsay.

4

Paragraph 3. Aside from statements which do not appear to be at issue, Paragraph 3 states:

> Deputy Gothard told me I was crying like a girl and that I should be able to handle a little sprain. [He] told me he was going to take me back to the jail if I did not get out of the van on my own and hop in on one foot. I screamed for help.

(Pl.'s Aff. ¶ 3.) Defendants appear to contend that some of these statements constitute inadmissible hearsay. (Defs.' Mot. to Strike 4.) Like the statements in Paragraph 2, however, none of these statements is offered to prove the truth of the matter asserted. For example, the Court doubts that Plaintiff is attempting to prove that he was "crying like a girl" and "should be able to handle a little sprain." The Court finds that these statements set forth facts based on personal knowledge and do not constitute inadmissible hearsay.

Paragraphs 4–6. Paragraphs 4 and 6 state that Plaintiff complained to "everyone [who] would listen" about the way Deputy Gothard treated him and about his unprofessional conduct. (Pl.'s Aff. ¶¶ 4, 6.) Paragraph 5 states that, upon returning to the jail, Plaintiff filled out a "call card" complaining about the way Deputy Gothard treated him. (*Id.* at ¶ 5.) The Court agrees with Defendants that these statements constitute inadmissible hearsay, offered to prove the truth of the matters asserted (Deputy Gothard's allegedly poor treatment of Plaintiff and unprofessional conduct). The statement in Paragraph 5 also violates Rule 56 in that a sworn or certified copy of the "call card" is not attached to the affidavit. Paragraphs 4, 5, and 6 are therefore **STRICKEN** in their entirety.

Paragraph 7. Aside from statements which do not appear to be at issue, Paragraph 7 states, "Deputy Gothard was not supposed to be there [outside the door to the medical tank]. He was there to harass me. He told other inmates in front of me that I cried like a little girl." (Pl.'s Aff. ¶ 7.) The first statement, that "Deputy Gothard was not supposed to be there," is not based

5

on personal knowledge and is therefore **STRICKEN**. In the next sentence, "[h]e was there to harass me," the phrase, "to harass me," indicating Deputy Gothard's intent, is not based on personal knowledge and is therefore **STRICKEN**. However, the third sentence above, stating that Deputy Gothard told other inmates that Plaintiff "cried like a little girl," is based on personal knowledge and is not offered to prove the truth of the matter asserted. It is therefore admissible.

Paragraph 8. Paragraph 8 sets forth facts based on personal knowledge, including Plaintiff's observations and thoughts, and states that Plaintiff "asked all the other inmates to document what happened." (Pl.'s Aff. ¶ 8.) Plaintiff's statement regarding his request to the other inmates does not constitute hearsay because it is not offered to prove the truth of a matter asserted. It is therefore admissible.

Paragraph 10. In the statement, "Deputy Gothard started coming by the medical tank to harass me," the words "to harass me," describing Deputy Gothard's intent, are not based on personal knowledge and are therefore **STRICKEN**.

Paragraph 11. The statement, "Deputy Gothard did his best to make me uncomfortable and miserable," is not based on personal knowledge and is therefore **STRICKEN**. The statement, "Deputy Gothard retaliated against me after I complained about his conduct," constitutes a legal conclusion and is therefore **STRICKEN**.

Paragraph 12. Defendants make no arguments specifically relating to Paragraph 12, which appears to be based on personal knowledge.

### B. Patricia Dixon's Affidavit

Defendants move to strike Paragraph 5 of Ms. Dixon's affidavit. In Paragraph 5, Ms. Dixon first states that "after my son's food was tainted he was afraid to eat the food that he received at the prison." (Dixon Aff. ¶ 5.) The Court finds that this statement is not based on

6

personal knowledge. In the remainder of Paragraph 5, Ms. Dixon recalls what Plaintiff and other "people in the background" allegedly told Ms. Dixon over the phone while Plaintiff was incarcerated. All of these statements are hearsay, offered to prove the truth of the matters asserted, and do not qualify for any exception to the hearsay rule. *See* Fed. R. Evid. 801–07. Paragraph 5 is therefore **STRICKEN** in its entirety.

### III. Plaintiff's and Deputy Gothard's Cross Motions for Summary Judgment

#### A. Franklin County

Plaintiff's motion for summary judgment against Franklin County is **DENIED** because Franklin County was dismissed as a party from this action on January 29, 2009. (Doc. 11.)

#### B. Deputy Gothard

Plaintiff moves for summary judgment against Deputy Gothard as to the alleged "§ 1983 violations arising from Plaintiff's [F]irst and [E]ighth [A]mendment rights." (Pl.'s Mot. 1.) In his memorandum in opposition, Deputy Gothard moves for summary judgment against Plaintiff as to the same claims. (Mem. Opp'n 1.)

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

7

of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### 1. *First Amendment*

As his claim under the First Amendment, Plaintiff alleges that "Deputy Gothard poured milk all over the Plaintiff's food and served it to him in retaliation for something the Plaintiff had supposedly done"—"something the Plaintiff had told him" when Plaintiff and Deputy Gothard "had a 'beef' with one another." (Pl.'s Mot. 6 (citing Herrell Dep. 16).) Plaintiff's Complaint does not allege these facts, stating merely that Deputy Gothard "tainted the Plaintiff's food"—an allegation which does not put Deputy Gothard at notice of any claim asserted under the First Amendment. (Compl. ¶ 39.) To avoid any unnecessary motions to amend, however, the Court will consider the merits of Plaintiff's First Amendment claim against Deputy Gothard as if the allegations in Plaintiff's motion and reply brief had been alleged in the Complaint.

It is undisputed that Deputy Gothard poured milk into Plaintiff's food tray in response to Plaintiff's behavior. Deputy Gothard described at his deposition:

- A. I was walking by One South Four, and I don't recall why, and I saw Inmate Blevins while they were passing their trays, and he became verbally –
- Q. Abusive again?
- A. Not abusive, but just trying to get my attention and get me to react. Obviously, he did. I took milk and poured it on his tray and gave it to him.
- Q. Was he swearing again?
- A. Yes.
- Q. And was he talking about the time when you had him in the wheelchair, and that you—
- A. I don't recall exactly what he said.
- Q. Okay. But he was essentially being a jerk to you?
- A. Yes.
- Q. Was he yelling and swearing, and so you took his tray and you poured milk on his food?

8

A. And gave it to him.[2]

(Gothard Dep. 32–33 (examination by Mr. Mordarski on behalf of Plaintiff).)

The Sixth Circuit has held that "[a] prisoner alleging retaliation for the exercise of a constitutional right must [first] show that . . . [he] engaged in protected conduct." *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). A prisoner's behavior in violation of prison regulations, including insolence, is not "protected conduct" under the First Amendment. *Lockett*, 526 F.3d at 874 (citing *Thaddeus-X*, 175 F.3d at 394; *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Lockett*, where prison regulations prohibited "'[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee,'" and the prisoner had called a hearing officer a "foul and corrupted bitch," the Sixth Circuit found that such speech was not protected conduct. *Id.*, 526 F.3d at 874.

Even if a prisoner's "yelling and swearing" at a deputy does not violate prison regulations, such conduct is not protected under the First Amendment. A panel of the Sixth Circuit has held that a prisoner's "cursing to correctional officials and complaining about his treatment he received . . . is not an activity that may be protected under the First Amendment." *Goddard v. Kentucky Dep't of Corrections*, Nos. 99-5348, 99-5971, 2000 U.S. App. Lexis 1912, *6 (6th Cir. Feb. 7, 2000) (unpublished opinion) (citing *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986)).

Plaintiff does not dispute that his conduct here consisted of verbally "trying to get [Deputy Gothard's] attention and get[ting] [him] to react" by, in the words of Plaintiff's own attorney, "yelling and swearing" and "essentially being a jerk." (Gothard Dep. 33.) The record

---

[2] Deputy Gothard acknowledged at his deposition that pouring the milk onto Plaintiff's tray "was a stupid thing to do" and resulted in an investigation and a one-day suspension. (*Id.* at 33–34.)

9

does not indicate specifically what Plaintiff said to Deputy Gothard or whether Plaintiff's behavior, like that involved in *Lockett*, violated facility regulations. Even assuming he did not violate facility rules, however, under *Goddard*, Plaintiff's conduct is not protected, and he cannot satisfy the first element of a retaliation claim.

Even construing the evidence and drawing all reasonable inferences in favor of Plaintiff, the evidence shows that there is no genuine issue as to any material fact, and Deputy Gothard is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is therefore **DENIED** as to this claim, and Deputy Gothard's cross motion for summary judgment is **GRANTED**.

### 2. *Eighth Amendment*

Plaintiff's Eighth Amendment claim against Deputy Gothard is based on the same milk-spilling incident discussed above. Plaintiff contends that such tampering violated his Eighth Amendment right to nutritionally adequate food. (Pl.'s Mot. 3.)

While prisoners have a constitutional right to "food that is nutritionally adequate for the maintenance of normal health," "there is no constitutional right that the food provided must be tasty or even appetizing," and "complaints about 'the preparation or quality of prison food' are generally 'far removed from Eighth Amendment concerns.'" *Moody v. Bell*, No. 1:08-cv-796, 2009 U.S. Dist. Lexis 83123, *8 (S.D. Ohio July 8, 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); quoting *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977); citing *Thaddeus-X*, 175 F.3d at 404)).

Deputy Firth testified at his deposition that, soon after after the lunch with spilled milk was served to Plaintiff, Plaintiff complained to him that it was "messed up," and Deputy Firth immediately replaced it with another lunch. (Firth Dep. at 26–27.) Plaintiff does not dispute that

10

he was immediately provided with another lunch. (*See* Pl.'s Reply 2–5.) Rather, he states in his affidavit that because milk had been spilled on his lunch once, he was afraid to eat other meals because he felt that Deputy Gothard may have tampered with those meals as well.

Aside from one meal with spilled milk, which was immediately replaced, there is no evidence suggesting that Deputy Gothard tampered with Plaintiff's food, and no evidence suggests that Plaintiff was at any time denied nutritiously adequate food. Even construing the evidence and drawing all reasonable inferences in favor of Plaintiff, the evidence shows that there is no genuine issue as to any material fact, and Deputy Gothard is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment therefore must be **DENIED** as to this claim, and Deputy Gothard's cross motion for summary judgment is **GRANTED**.

## IV. Conclusion

For the reasons discussed above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Strike Portions of the Affidavits of Patricia Dixon and Wes Blevins (Doc. 51), **DENIES** Plaintiff's Motion for Summary Judgment Against Defendants Franklin County and Marc Gothard (Doc. 30), and **GRANTS** Marc Gothard's Cross Motion for Summary Judgment (Doc. 45). Plaintiff's claims against Marc Gothard under the First and Eighth Amendments are hereby **DISMISSED**.

**IT IS SO ORDERED.**

_____8-6-2010_____  
**DATED**

**EDMUND A. SARGUS, JR.**  
**UNITED STATES DISTRICT JUDGE**