IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WES BLEVINS,

      Plaintiff,

    v.

COUNTY OF FRANKLIN, OHIO,
et al.,

      Defendants.

Case No. 2:08-cv-1113
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

This matter comes before the Court on the following motions: Defendants' Motion for Summary Judgment (D.E. 52), and Plaintiff's combined Motion for Sanctions and Motion to Strike Portions of Defendants' Motion for Summary Judgment (D.E. 55).[1] For the reasons discussed below, Plaintiff's combined Motion for Sanctions and Motion to Strike is **DENIED**; Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's federal claims only; and the case is **REMANDED** to the Court of Common Pleas for Franklin County, Ohio for further proceedings on the remaining state-law claims.

Plaintiff Wes Blevins, a former pre-trial detainee at the Franklin County Correctional Center II, in Columbus, Ohio, brought this action in the Court of Common Pleas for Franklin County, Ohio, against the following Defendants: County of Franklin, Ohio ("Franklin County"); Franklin County Board of Commissioners; Franklin County Sheriff Jim Karnes, individually and in his official capacity; deputies Robert Ellis, Marc Gothard, and Michael Firth, individually and

---

[1] Plaintiff's combined motion for sanctions and to strike portions of the defendants' motion for summary judgment was incorporated into his response in opposition to Defendants' motion for summary judgment.

in their official capacities; LPN Stephanie Solis, individually and in her official capacity; and John Does 1-10. Plaintiff's complaint asserts four state-law causes of action, and one federal-law cause of action. As to the causes of action arising under state law, Count I alleges a claim for assault and battery against defendants Deputy Ellis, Deputy Gothard, and Deputy Firth. Count I also alleges that the allegedly tortious actions by these defendants were undertaken "pursuant to regulations, customs, policies and practices of Defendant Franklin County Sheriff and Franklin County." Compl. ¶ 45. Count II of Plaintiff's complaint alleges a claim for intentional infliction of emotional distress against Defendants LPN Solis, Deputy Ellis, Deputy Gothard, Deputy Firth, and Sheriff Karnes. Count II also claims that the acts allegedly constituting intentional infliction of emotional distress were undertaken "pursuant to regulations, customs, policies and practices of Defendant Franklin County Sheriff and Franklin County." Count III alleges a claim against Deputy Ellis and Deputy Gothard for the negligent operation of a motor vehicle. Count IV alleges "intentional, reckless, wanton, malicious, and bad faith conduct," of "[a]ll Defendants] for "failing to provide recreation, falsifying documents stating inmates received recreation, retaliating against Plaintiff, failing to supervise inmates in the courtyard, failing to warn inmates of know[n] dangers, and ignoring the mandates of Ohio Revised Code Section[s] 341 [and] 5120.10." Compl. ¶ 55. Plaintiff's complaint states that the alleged conduct giving rise to Count IV were undertaken "pursuant to regulations, customs, policies and practices of Defendant Franklin County Sheriff and Franklin County." Finally, Count V sets forth Plaintiff's federal-law claims pursuant to 42 U.S.C. § 1983 for civil rights violations. In Count V, Plaintiff alleges claims against Deputy Firth, Deputy Ellis, Deputy Gothard, and LPN Solis for violating his rights under the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution. As relief, Plaintiff seeks compensatory and punitive damages, as well as attorney fees and costs.

Defendants removed the case to this Court on the basis of Plaintiff's federal civil rights claims. On an unopposed motion by Defendants Franklin County and Franklin Board of Commissioners (Doc. 6), this Court adopted a report and recommendation by the magistrate judge and dismissed Plaintiff's claims against those defendants on January 29, 2009 (Docs. 8 and 11). Thereafter, Plaintiff filed a motion for summary judgment on his claims against Defendant Franklin County, which had already been dismissed as a party, and on his § 1983 claims against Defendant Deputy Gothard for alleged violations of Plaintiff's Eighth and First Amendment rights (Doc. 30). Deputy Gothard's response in opposition to Plaintiff's motion incorporated a cross-motion for summary judgment seeking dismissal of Plaintiff's claims against him for allegedly violating Plaintiffs' rights under the First and Eighth Amendments (Doc. 45). In an opinion and order entered on August 6, 2010, the Court denied Plaintiff's motion for summary judgment, granted Deputy Gothard's cross-motion for summary judgment, and dismissed Plaintiff's claim against Deputy Gothard under the First and Eighth Amendments (Doc. 61).[2]

While Plaintiff's motion for summary judgment and Deputy Gothard's cross-motion for summary judgment were still pending, Defendants filed a comprehensive motion for summary judgment (Doc. 52). Plaintiff filed a response, which incorporated a motion for sanctions for spoliation of evidence, and a motion to strike those portions of Defendants' comprehensive motion for summary judgment arguing for dismissal of Plaintiff's § 1983 claims against Deputy Gothard for alleged violations of Plaintiff's First and Eighth Amendment rights. Defendants filed a response in opposition to Plaintiff's motion for sanctions, and separately, a response in

---

[2] The Court's opinion and order denied as moot Plaintiff's motion for summary judgment against Franklin County, noting that Franklin County had been dismissed as a party from this action on January 29, 2009.

3

opposition to Plaintiff's motion to strike portions of Defendants' comprehensive motion for summary judgment. These motions are now fully briefed and ripe for disposition.

## I. Background

On September 24, 2007, while in the custody of the Franklin County Correctional Center II, Plaintiff and other inmates in his cell block were removed from their cells and taken to an outdoor courtyard. While he was in the courtyard, Plaintiff claims that he either slipped or tripped on a six-to-eight-inch-diameter rock that was partially buried in the ground. Plaintiff's ankle was severely injured. According to the Internal Affairs Interview report prepared in response to Plaintiff's later grievance about how he was treated, Plaintiff admitted that he sustained the injury to his ankle when he slipped on some gravel, lost his balance, and slid into a concrete wall while running in a footrace against another inmate. After being alerted to Plaintiff's injury by inmates pounding on the door leading to the courtyard, several Franklin County deputies entered the courtyard. According to Plaintiff, the deputies verbally abused him and made fun of him. Plaintiff alleges, for example, that the deputies who first arrived in the courtyard to check on his injury told him to "stop crying" and to "walk off" his injury and called him names such as "dumb ass" and "stupid ass."

The deputies called a code blue medical. Plaintiff was handcuffed, placed in a wheelchair, and taken to the North Booking area of the facility, where Plaintiff was held while deputies arranged for a county-owned van to take Plaintiff to the hospital. Approximately fifteen minutes later, a van was ready to transport Plaintiff to the hospital, and Plaintiff was wheeled to the loading area. Plaintiff alleges that, as Deputy Gothard pushed the wheel chair, the two exchanges words and Deputy Gothard deliberately ran Plaintiff's injured foot into a wall. Once in the loading area, Deputies Ellis and Gothard refused to help Plaintiff into the van, and he was

4

forced to lift himself, while still in handcuffs, from the wheelchair into the van. Plaintiff was sitting sideways with his injured ankle resting on the seat. He was not wearing a seatbelt.

After Plaintiff got into the van, Deputy Ellis started the ignition and proceeded backward for some distance. As he did so, he backed his bumper into that of another van parked behind him in the loading area. Plaintiff claims that his foot "slammed onto the floor of the van causing injury to his ankle." After checking on the damage to the vehicle and reporting the accident, Deputy Ellis and Deputy Gothard switched places, with Deputy Gothard taking the driver's seat. According to Plaintiff, Deputy Gothard intentionally and repeatedly "slammed on the brakes" causing Plaintiff's injured foot to hit the floor.

Once at the hospital, Deputy Ellis and Deputy Gothard informed Plaintiff that no wheelchairs were available and that he would have to hop inside. Plaintiff refused. Eventually, Deputy Gothard was able to secure a wheelchair. Plaintiff was taken inside. He ultimately was admitted and underwent surgery on his ankle.

Upon his release from the hospital on September 27, 2007, Plaintiff was prescribed Oxycotin and Percocet. Plaintiff returned to the Franklin County Correctional Center II, where he was placed in the medical ward. Plaintiff states that he was not given his medications on the schedule prescribed by his hospital physician. On October 5, 2007, Plaintiff submitted a written Health Service Request complaining that LPN Solis had changed the schedule on which Plaintiff was to receive his medications. Motion for Summary Judgment, Ex. S. He alleges that Defendants did not respond to his requests for his medications. Finally, Plaintiff claims that unidentified deputies harassed and retaliated against him after he returned from the hospital[3]

---

[3] Plaintiff also claims that Deputy Gothard tampered with Plaintiff's food while Plaintiff was recovering from in the medical ward. Plaintiff makes this allegation in support of his Eighth Amendment claim against Deputy Gothard. As noted above, the Court has dismissed Plaintiff's Eighth Amendment food tampering claim against Deputy Gothard.

5

## II. Motion for Sanctions

In his motion for sanctions, Plaintiff contends that Defendants are either unable or unwilling to produce three code blue medical videotapes that are in Defendants' control and that would show Defendants' deliberate indifference to Plaintiffs' medical needs, Defendants' use of excessive force, Defendants' mockery and ridicule of Plaintiff, and Plaintiff's substantial loss of weight in a short timeframe. Plaintiff contends that, under the policy of the Franklin County Correctional Facility II, the code blue tapes should have been retained for six years in multiple locations, but that they in fact have been lost or destroyed. Plaintiff invokes the Court's inherent power to craft appropriate sanctions for spoliation of evidence. *See Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (recognizing that "a federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence.") Specifically, Plaintiff asks the Court for an order striking Defendants' motion for summary judgment and either preventing Defendants from presenting evidence at trial or instructing the jury that they may draw an inference that the missing tapes would be favorable to Plaintiff. Alternately, Plaintiff requests that in considering Defendants' motion for summary judgment, the Court infer that the lost or destroyed tapes contained evidence favorable to Plaintiff.

A party seeking sanctions based on the spoliation of evidence must establish the following:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). Plaintiff contends broadly that the Franklin County Sheriff's Department had a duty to preserve the code blue medical

6

tapes, both because the Sheriff's Department has a policy requiring retention of such tapes for six years and because the Sheriff's Department should have known that the tapes may be evidence in future litigation based upon Plaintiff's pursuit of internal grievances at the time. In his view, these facts "suggest[ ] bad faith on the part of the Defendants." (Doc. 60 at 6.)

Plaintiff also asserts that his rights have been prejudiced as a result of the destroyed evidence. He claims that the videotapes would provide evidence that when Deputy Firth responded to the first code blue call, Plaintiff did not want Deputy Firth to touch him because he was afraid that Deputy Firth would throw him to the ground. According to Plaintiff, the videotape from the first code blue incident would also demonstrate that the deputies who responded to that code blue were verbally abusive to him. Finally, Plaintiff states that the two remaining code blue videotapes would show that the deputies who responded to these code blue incidents were verbally abusive to him, ignored his complaints about his medical treatment, and aggressively threw him into a wheelchair.

Having reviewed the parties' briefs, the record before the Court, and the relevant law, the Court concludes that Plaintiff has failed to carry his burden. He not demonstrated that any of the Defendants had a duty to preserve the code blue videotapes. Although he states that the Franklin County Sheriff's Department had such a duty, without reference to any provision of state law, including the Ohio Public Policy Act, Ohio Rev. Code § 149.01 et seq., he does not allege, nor has he shown, that such duty resides in the person of Sheriff Karnes, Deputy Ellis, Deputy Firth, Deputy Gothard, or LPN Solis, either individually or in their official capacities. To the contrary, in his motion for sanctions, he claims that Major Michael Herrell "is in charge of the general operation" of the facility where Plaintiff was detained, and that "the buck stops with Major Herrell" at that facility. He further states that the videotapes made during code blue calls are

copied and sent to Major Herrell and to Internal Affairs. Plaintiff has not shown that any of the defendants were responsible for recording the code blue tapes at issue in this action, for forwarding copies to Major Herrell and Internal Affairs, or for storing copies.

Plaintiff has also failed to demonstrate that the tapes were destroyed "with a culpable state of mind." Nothing in the record suggests that any of the Defendants had access to either the original videotapes or the copies. Thus, even if Defendants were or should have been aware that Plaintiff's internal grievances might ripen into litigation, Plaintiff has presented no evidence that Defendants destroyed the tapes. Absent such evidence, there can be no finding that Defendants acted with a culpable state of mind.

Based upon the foregoing, even assuming, without deciding, that the missing tapes are relevant to his claims, Plaintiff has failed to carry his burden of showing that sanctions for spoliation are warranted. Accordingly, Plaintiff's Motion for Sanctions is denied.

## III. Motion to Strike

Plaintiff's motion to strike asks the Court to strike all portions of Defendants' Comprehensive Motion for Summary Judgment that pertain to Deputy Gothard.[4] Plaintiff's argument appears to be that Defendants' Comprehensive Motion for Summary Judgment constitutes an impermissible second motion for summary judgment insofar as it seeks judgment on Plaintiff's claims against Deputy Gothard. In Deputy Gothard's response to Plaintiff's motion for partial summary judgment, he did not address any claims other than those for which Plaintiff sought summary judgment in Plaintiff's favor, i.e., the § 1983 claims for alleged violations of the First and Eighth Amendments. Under the caselaw of the Sixth Circuit, however, "[d]istrict courts may in their discretion permit renewed or successive motions for

---

[4] Plaintiff also requests that the Court strike all portions of the motion for summary judgment that pertain to Franklin County. As noted above, however, Franklin County has been dismissed as a party this action.

8

summary judgment . . . ." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000); *see also Lexicon, Inc. v. Safeco Ins. Co. of America*, 436 F.3d 662, 670 n. 6 (6th Cir. 2006) ("as a procedural matter, parties are not limited to one summary judgment motion"). Moreover, Deputy Gothard's earlier request for judgment in his favor on two particular claims was made in response to Plaintiff's motion for summary judgment on those two claims. For these reasons, the Court declines to strike those portions of Defendants' Comprehensive Motion for Summary Judgment pertaining to claims against Deputy Gothard. Accordingly, Plaintiff's Motion to Strike is denied.

**IV. Motion for Summary Judgment**

### A. <u>Standard of Review</u>

Defendants have moved for summary judgment under Civil Procedure Rule 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, at 279–80 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

9

**B. Analysis**

1. *Federal Claims Pursuant to 42 U.S.C. § 1983*

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). In this action, the parties agree that Defendants acted under the color of state law. The parties dispute, however, whether Defendants' conduct resulted in the deprivation of any constitutional right.

As a preliminary matter, the Court notes that state officials who are sued in their official capacities for monetary damages are not considered "persons" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 & n. 10 (1989). When a plaintiff seeks injunctive relief, state officials may be sued in their official capacities. Here, Plaintiff has sued Defendants in both their individual and official capacities; however, he seeks only monetary damages, not injunctive relief. Accordingly, Plaintiff's § 1983 claims may proceed, if at all, only to the extent he seeks monetary damages against Defendants in their individual capacities for conduct taken in the performance of their public duties. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of 1983").

Plaintiff's § 1983 claim contends that various actions at various times by Defendants Firth, Ellis, Gothard and Solis violated his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. The Court considers each alleged constitutional violation in turn.

10

### a. **First Amendment Claims**

Plaintiff's complaint alleges no facts stating a First Amendment claim against Deputy Ellis. As to Defendants Deputy Firth and Deputy Gothard, Plaintiff alleges that they retaliated against him while he was recovering from his ankle injury by tampering with his food. As noted above, the Court has previously dismissed on summary judgment Plaintiff's First Amendment claim against Deputy Gothard for allegedly tampering with Plaintiff's food. The retaliation claim against Deputy Firth, however, has not yet been addressed.

Regarding LPN Solis, Plaintiff alleges that she refused to give him his prescribed medications. Compl. ¶ 40. Plaintiff also alleges that unspecified Defendants failed to respond to his requests for the pain medication he was prescribed when he was released from the hospital and that they "took" his medications. Compl. ¶¶ 41, 42. Defendants construe these allegations as a claim that LPN Solis retaliated against him by refusing to respond to his requests to receive his prescribed medications after he submitted a written complaint about the change LPN Solis had made to the distribution schedule of his medications. Motion for Summary Judgment at 14.

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate the following: "that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999). If the plaintiff establishes the three elements, the burden of production then shifts to the defendants to show that their conduct would have been the same if the plaintiff had not engaged in the protected conduct. *Id.* at 400.

Regarding Deputy Firth, Plaintiff has failed to identify any constitutionally protected conduct in which he was engaged, nor has he identified any action taken by Deputy Firth that can

11

be construed as an adverse action. Accordingly, Plaintiff's First Amendment claim against

Deputy Firth is dismissed.

An inmate has a First Amendment right to filed grievances against prison officials,

provided that the grievance is non-frivolous. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001). Accordingly, in this case, insofar as the filing of a Health Services Request constitutes a

grievance against LPN Solis, which Defendants tacitly concede in their motion for summary

judgment, Plaintiff's conduct was constitutionally protected. Plaintiff has thus established the

first prong of his First Amendment retaliation claim. He has not, however, established the

remaining two prongs.

For purposes of a First Amendment retaliation claim, the standard for the second prong—

that the defendant took an adverse action against the plaintiff—is that "a person of ordinary

firmness would be deterred" by the defendant's actions from engaging in the protected activity.

*Thaddeus-X*, 175 F.3d at 398. Regarding this second prong, Defendants submitted evidence that

LPN Solis changed the distribution schedule of Plaintiff's medications to bring it into

compliance with the prescription written by Plaintiff's treating physician upon Plaintiff's

discharge from the hospital. Motion for Summary Judgment, Ex. H (Discharge Prescriptions),

Ex. Q (Prescription Orders), Ex. S (Health Services Request and Response Form). Specifically,

Defendants submitted copies of the prescriptions for Oxycotin and Percocet that Plaintiff's

physician at Mount Carmel West Hospital issued when Plaintiff was discharged on September

27, 2007; copies of the initial prescription order dated September 28, by the Franklin County

Correctional Center for Percocet and Oxycotin, and the corrected Percocet order dated October

4; and a copy of the Health Services Request, which includes both Plaintiff's complaint and LPN

Solis's response.

12

These documents show that upon discharge from the hospital, Plaintiff's treating physician prescribed Oxycotin every twelve hours ("Q 12°"), and Percocet every three hours as needed ("Q 3° prn"). Motion for Summary Judgment, Ex. H (Discharge Prescriptions). Initially, the Franklin County Correctional Facility ordered the Percocet to be distributed every three hours ("Q 3°"), starting on September 28, 2007, regardless of whether Plaintiff needed it. Motion for Summary Judgment, Ex. Q (Prescription Orders). On October 4, 2007, LPN Solis corrected the Prescription Order to reflect the schedule prescribed by the hospital physician, that is, Percocet every three hours as needed ("Q 3° prn").

On October 5, 2007, Plaintiff submitted a Health Service Request form, which stated: "Nurse Stephanie told me I could only get meds with reg. inmates. Yesterday they changed to [sic] meds to as needed—today only reg. basis. I didn't know that Steph ran the show. I am in tremendous pain." Motion for Summary Judgment, Ex. S (Health Services Request and Response Form). In addition, Plaintiff checked a box stating that he did not wish to be seen at sick call. Rather, he stated, "I need to know why your [sic] letting Stephanie take my meds[.] Is she a doc?" Id. The Health Services Request Form includes LPN Solis's response:

> [Inmate] has been told if he wishes to have pain medication anytime other than scheduled med pass times he must notify deputy staff who will then contact [the] Medical [Unit]. His medication is ordered PRN (as needed). Nurses will not offer pain medication every 3 hours[;] it will only be given if requested.

Id. In addition, Defendants submitted copies of Plaintiff's Medication Administration Record Sheet ("MARS sheet") demonstrating that Oxycotin was distributed to Plaintiff twice a day every day from October 1, 2007 until Plaintiff's release date on October 10, 2007.[5] Motion for Summary Judgment, Ex. J (Medication Administration Record Sheet). The MARS sheet also

---

[5] Defendants claim that the Franklin County Correctional Facility does not maintain a supply of Oxycotin onsite and that as a result, the distribution of that drug to Plaintiff did not begin until October 1, 2007. Plaintiff does not dispute this assertion.

demonstrates that after Plaintiff filed the Health Services Request Form, Plaintiff received

Percocet as follows: October 6, 2007, at 1:00 a.m., 4:00 a.m., and 10:00 a.m.; October 7, 2007,

at 1:00 a.m., 4:00 a.m., 10:00 a.m., 4:00 p.m., and 7:00 p.m.; October 8, 2007, at 1:00 a.m., 4:00

a.m., 10:00 a.m., 4:00 p.m., and 7:00 p.m.; October 9, 2007, at 1:00 a.m., 4:00 a.m., 10:00 a.m.,

and 4:00 p.m.; and October 10, 2007, at 1:00 a.m., 7:00 a.m., 10:00 a.m., and 4:00 p.m. Finally,

Defendants have submitted a copy of LPN Solis's work schedule. Motion for Summary

Judgment, Ex. P (Shift Assignment Sheet). According to Defendants, this document

demonstrates that LPN Solis did not work any day after Plaintiff filed his Health Services

Request Form until Plaintiff was released from custody.[6] Id.

Plaintiff offers neither evidence nor argument to refute Defendants' evidence that LPN

Solis changed the distribution schedule of Plaintiff's Percocet to comply with the prescription

written by the discharging physician; that LPN Solis informed Plaintiff that he could have his

medication every three hours if he requested it; that he in fact received his medications several

times a day every day, even after he submitted the Health Services Request Form; or that LPN

Solis did not work again after October 5, 2007 while Plaintiff remained in custody and therefore

could not have refused to give him his medication upon request. The only counter-evidence

Plaintiff submits is an affidavit stating: "While recovering at Franklin County Correctional

Facility II, I was not given my pain medications as prescribed by my doctor. Nurse Solis refused

to give me my medications. I never at any time refused any of my medications." Blevins

Second Aff. ¶¶ 25, 26, 36. Plaintiff, however, does not assert that LPN Solis withheld his

medications in retaliation for his filing a health services complaint, nor does he allege that he

ever requested his medication and that LPN Solis refused to accommodate his request. Finally,

---

[6] The Court notes that it interprets Defendants' contention to be that LPN Solis did not work on
medication distribution rounds on those days.

14

Plaintiff fails to provide any argument or evidence that he was dissuaded from making any further complaints about his medical treatment in the face of LPN Solis's refusal to distribute his Percocet every three hours regardless of whether he requested it.

Based upon the foregoing, the Court concludes that Plaintiff has failed to make a prima facie showing that LPN Solis took an adverse action against him. Absent a showing of adverse action, Plaintiff also fails to meet the third prong of a prima facie retaliation claim, that is, "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d at 399. Accordingly, Plaintiff's §1983 claim for violation of his First Amendment fails as a matter of law.

### b. Fourth and Eighth Amendment Claims

Plaintiff's § 1983 claim states that the actions of Defendants Firth, Ellis, Gothard, and Solis violated his right to be free from the use of excessive force. Among other constitutional provisions, which the Court will address separately, Plaintiff's complaint invokes the Fourth and Eighth Amendments. Defendants contend that, because Plaintiff was a pretrial detainee at the time he alleges he was subject to excessive force, Plaintiff cannot prevail on his Fourth Amendment claims. The Court agrees and concludes that for the same reason Plaintiff cannot prevail on his Eighth Amendment excessive force claim either.

"In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 395).

15

"For a plaintiff who was a convicted prisoner at the time of the incident, the Eighth Amendment sets the standard for an excessive force claim." *Id.* (citing *Graham*, 490 at 395 n.10). The protections against excessive force afforded to a pretrial detainee against are analyzed under "the more generally applicable due process clause of the Fourteenth Amendment." *Id.* The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 490 U.S. at 395 n. 10.

There is no dispute that Plaintiff was a pretrial detainee when he was allegedly subjected to the use of excessive force. Accordingly, the Fourth Amendment and Eighth Amendment are inapplicable to his § 1983 claim and therefore fail as a matter of law.

### c. Fifth Amendment Claim

Plaintiff asserts that Defendants Firth Ellis, Gothard, and Solis have deprived Plaintiff of his Fifth Amendment rights. Defendants argue that Plaintiff's Fifth Amendment claims must fail because they are not federal actors and therefore the Due Process Clause of the Fifth Amendment is inapplicable to them.

The Fifth Amendment provides, in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment Due Process Clause, however, applies only to actions of the federal government, not those of state governments. *Public Util. Comm'n v. Pollack*, 343 U.S. 451, 461 (1952).

Defendants in this action are state officials. The Fifth Amendment Due Process Clause, therefore, is inapplicable to Plaintiff's § 1983 claim against them. Accordingly, summary judgment must be granted to Defendants on Plaintiff's § 1983 claim under the Fifth Amendment.

### d. Fourteenth Amendment Claims

Plaintiff alleges that Defendants Firth, Ellis, Gothard, and Solis engaged in conduct that violated his right to be free from the use of excessive force, his right to be free from cruel and unusual punishment, his right to receive adequate medical treatment, his right to be free from deliberate indifference to serious medical needs, and "his right not to be punished as pretrial detainee." Compl. § 59. He further alleges that Defendant Karnes "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in their city." Compl. § 60. As noted above, Plaintiff was a pretrial detainee at the time the alleged constitutional violations occurred. Accordingly, his § 1983 claims arise under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520 (1979).

Although Plaintiff's complaint does not identify which actions by which Defendants give rise to which constitutional claims, the factual allegations he sets forth may be construed as setting forth the following claims against Deputy Gothard: (1) a claim for excessive force amounting to punishment (a) for allegedly running Plaintiff's broken leg into a wall while wheeling Plaintiff to the loading dock for transport to the hospital, and (b) for intentionally, repeatedly and suddenly applying the brakes of the van during the drive to the hospital causing Plaintiff to use his injured ankle to maintain his balance; (2) a claim for deliberate indifference to a serious medical need for the same conduct as in (1), above, and for refusing to help Plaintiff get into the van despite Plaintiff's being handcuffed and injured, and for telling Plaintiff he would have to hop into the emergency room because no wheelchairs were available upon Plaintiff's arrival at the hospital.

Plaintiff factual allegations may be construed as setting forth the following claim against Deputy Ellis: (1) a claim for excessive force amounting to punishment for allegedly running

17

Plaintiff's broken leg into a wall while wheeling Plaintiff to the loading dock for transport to the hospital; and (2) a claim for deliberate indifference to a serious medical condition for causing a motor vehicle accident while Plaintiff was a handcuffed and injured passenger in the van Deputy Ellis was driving; for refusing to help Plaintiff get into the van despite Plaintiff's being handcuffed and injured; and for telling Plaintiff he would have to hop into the emergency room because no wheelchairs were available upon Plaintiff's arrival at the hospital.

Plaintiff's factual allegations may be construed as setting forth the following claim against Deputy Firth: a claim for cruel and unusual punishment for serving tainted food to Plaintiff while Plaintiff was recovering from his ankle injury.

Plaintiff's factual allegations may be construed as setting forth the following claim against Defendant Solis: a claim for deliberate indifference to a serious medical need for failing to distribute pain medication to Plaintiff on the schedule prescribed by the physician who discharged Plaintiff from the hospital after Plaintiff's ankle surgery.

Plaintiff alleges no conduct by Defendant Franklin County Sheriff Karnes.

The Court examines Plaintiff's Fourteenth Amendment claims against each Defendant in turn.

### i. Claims against Deputy Gothard

Regarding Plaintiff's excessive force claim against Deputy Gothard, Plaintiff alleges two sets of facts. First, he asserts that while pushing Plaintiff's wheelchair to the loading dock, Deputy Gothard intentionally ran Plaintiff's broken leg into a wall multiple times. Second, he avers that while driving Plaintiff to the hospital, Deputy Gothard intentionally, repeatedly and suddenly applied the brakes of the van causing Plaintiff to have to put pressure on his injured ankle to maintain his balance.

18

### (a) Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force

that amounts to punishment." *Graham,* 490 U.S. at 395 n. 10; see also *Darrah v. City of Oak*

*Park*, 255 F.3d 301, 305-06 (6th Cir. 2001) ("[W]hile the Fourth Amendment 'objective

reasonableness' analysis should be used in excessive force cases involving searches and seizures,

where there is no search or seizure, the Supreme Court has held that the substantive component

of the Fourteenth Amendment's due process clause is the most appropriate lens with which the

view an excessive force claim." (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-33

(1998)). The substantive due process guarantee of the Fourteenth Amendment protects against

the exercise of governmental power "without any reasonable justification in the service of a

legitimate governmental objective." *County of Sacramento*, 523 U.S. 846. Nevertheless, "[a]

substantially higher hurdle must be surpassed to make a showing of excessive force under the

Fourteenth Amendment than under the 'objective reasonableness' test of *Graham*, in which

excessive force can be found if the officer's actions, in light of the totality of the circumstances,

were not objectively reasonable." *Darrah*, 255 F.3d at 306. As established by the United States

Supreme Court, the test for excessive force under the Fourteenth Amendment is whether the

alleged conduct "shock[s] the conscience and [is] so brutal and offensive that is [does] not

comport with traditional ideas of fair play and decency." *County of Sacramento*, 523 U.S. at 847

(quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (internal quotation marks omitted)).

### (i) The Wheelchair Incident

Defendants contend that summary judgment should be granted in their favor on

Plaintiff's excessive force claims against Deputy Gothard regarding the wheelchair incident

because they have submitted uncontroverted objective evidence establishing that Plaintiff's

version of events simply did not occur. Specifically, Defendants have submitted a copy of videotape taken from the loading dock area showing that as Deputy Gothard attempted to push Plaintiff' wheelchair across the exit door's threshold, the wheels became stuck on the threshold riser, and Deputy Gothard pulled and pushed the wheelchair back and forth a few times to get the chair across the riser.

In response, Plaintiff offers an affidavit which merely repeats his allegation that Deputy Gothard purposefully pushed Plaintiff's injured leg into the wall while Plaintiff was in a wheelchair. Plaintiff does not, however, offer additional facts about when or where the alleged incident occurred, nor does he contend that the incident which he alleges occurred was not the one captured on videotape. Given Plaintiff's failure to counter Defendants' assertion that the videotape recorded the incident giving rise to Plaintiff's excessive force claim, Plaintiff effectively concedes that the videotape does, in fact, capture the wheelchair incident that he says constitutes excessive force.

As noted above, in reviewing a motion for summary judgment, the Court must consider the facts and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, the facts may be viewed in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).[7] Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The disputed fact must be material and the dispute over that fact must be genuine. *Id.* at 248. "When opposing parties tell

---

[7] Federal Rule of Civil Procedure 56 (c ) is the predecessor to current Federal Rule of Civil Procedure 56(a).

20

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

     In light of the United States Supreme Court's decision in *Scott*, which held that the videotape evidence in that case "utterly discredited" the non-moving party's version of events such that a reasonable jury could not have believed it and that, therefore, denial of summary judgment was improper, the United States Court of Appeals for the Sixth Circuit has recognized that "a court may properly consider videotape evidence at the summary-judgment stage." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010); *see also*, *Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008) (affirming grant of summary judgment to moving party based upon undisputed facts recorded on videotape). In applying *Scott* and its Sixth Circuit progeny to a case involving the use of audiotape as the basis for a grant of summary judgment, the Sixth Circuit recently emphasized that summary judgment is improper unless the non-moving party's version of events is "'*blatantly contradicted by the record*'" or "'*utterly discredited by the record*.'" *Coble v. City of White House*, No. 09-6156, 2011 U.S. App. LEXIS 2632, at *10 (6th Cir. Feb. 11, 2011 (quoting Scott, 550 U.S. at 380-81) (emphasis added in original quote)).

     Here, the videotape utterly discredits Plaintiff's assertion that in wheeling Plaintiff out to the loading dock, Deputy Gothard repeatedly and intentionally ran plaintiff's injured foot against the wall. What the videotape shows is that Deputy Gothard jostled the wheelchair back and forth a few times when it became stuck on the riser of the threshold of the doorway leading to the loading dock. No reasonable jury could view that video and conclude that Deputy Gothard ran Plaintiff's foot into the wall—deliberately or otherwise. Given Plaintiff's effective concession that the wheelchair incident was captured on the videotape evidence submitted by Defendants,

the Court concludes that Plaintiff's §1983 claim for excessive force amounting to punishment in violation of his Fourteenth Amendment right to due process fails as a matter of law to the extent that it relies on the allegation that Deputy Gothard intentionally ran Plaintiff's broken ankle into the wall.

### (ii) The Brake-Slamming Incident

Plaintiff's second excessive force claim against Deputy Gothard is based upon an incident Plaintiff alleges occurred while he was being transported to the hospital, namely that Deputy Gothard intentionally, suddenly, and repeatedly applied the brakes of the van causing Plaintiff's foot to hit the floor. Regarding this alleged incident, Plaintiff's Complaint states: "While driving to the hospital, Deputy Gothard purposely slammed on the brakes numerous times causing Plaintiff's foot to hit the floor." Compl. ¶ 30.

Defendants do not specifically address this allegation in their motion for summary judgment. Rather, they argue that they are entitled to summary judgment because Plaintiff has not supported his "cruel and unusual punishment" claim with allegations of specific conduct that was unnecessary, malicious, or sadistic.[8] The Court construes this argument as a contention that the alleged conduct by Deputy Gothard was insufficiently brutal or offensive to shock the conscience under the Fourteenth Amendment standard for determining whether conduct constitutes excessive force that amounts to punishment. Alternatively, Defendants argue that Deputy Gothard is entitled to qualified immunity.

In response to Defendants' motion for summary judgment, Plaintiff submitted two affidavits. The first one states: Deputy Gothard slammed on the brakes of the van while transporting me to the hospital." Aff. of Wesley Blevins, at ¶ 2 (Doc. 52-11). Plaintiff's Second

---

[8] Defendants' analysis is couched in terms of Eighth Amendment claims. As noted above, however, the Fourteenth Amendment, not the Eighth, provides the proper analysis of Plaintiff's excessive force claims.

Affidavit avers: "While driving to the hospital, Deputy Gothard purposely slammed on the brakes numerous times causing my foot to hit the floor." Second Aff. of Wesley Blevins, ¶ 18 (Doc. 55-2). These allegations are the sum total of Plaintiff's claim relating to the alleged repeated and hard braking. They allege no injury or additional injury to Plaintiff's ankle as a result of Deputy Gothard's alleged conduct on the drive to the hospital. Moreover, in the context of addressing Plaintiff's assault and battery claims, Defendants point out that the medical evidence in the record contains no indication that Plaintiff mentioned to medical personnel that he had sustained additional injury to his ankle on the way to the hospital as a result of Deputy Gothard's alleged frequent braking. In sum, Plaintiff has failed to claim that he suffered any injury from the repeated braking.

Based upon the foregoing, the Court concludes that even if the alleged conduct rises to the level of a constitutional violation, which the Court assumes only for purposes of this analysis, Deputy Gothard is entitled to qualified immunity. Government officials acting in an official capacity performing discretionary functions are generally insulated from liability from civil suits for monetary damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to government officials unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.*

23

As it pertains to this case, at the time the alleged conduct occurred, the law in the Sixth Circuit required that a pretrial detainee's injuries, even if intentionally inflicted, must be more than *de minimis* to support a constitutional violation. *United States v. Budd*, 496 F.3d 517, 530-31 (6th Cir. 2007). Although the United States Supreme Court has since clarified that the appropriate question in an inmate's excessive force claim is the nature of the force rather than the extent of the injury, see *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1177 (2010), the Supreme Court still recognizes that not all force rises to the level of a constitutional violation, *see id.* at 1178 (noting that not "every malevolent touch by a prison guard gives rise to a federal cause of action" (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). This Court need not resolve whether Gothard's alleged conduct constitutes excessive force tantamount to punishment under after *Wilkins* because, given Plaintiff's failure to allege even *de minimis* injury, Gothard's alleged conduct was not clearly unconstitutional at the time it occurred. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (courts may consider whether a constitutional right was clearly established at the time of the allegedly infringing conduct without first determining whether the officer's conduct violated a constitutional right). Absent an allegation of injury caused by the alleged braking, Plaintiff cannot prevail on his excessive force claim because a constitutional right to be free from excessive force even when the force results in no injury was not clearly established in the Sixth Circuit at the time the allegedly infringing conduct occurred.

### (b) Deliberate Indifference to a Serious Medical Condition

Plaintiff alleges claims of deliberate indifference to serious medical needs against Deputy Gothard based upon the wheelchair incident, the braking incident, refusal to help Plaintiff get into the van despite Plaintiff's being handcuffed and injured, and telling Plaintiff he would have to hop into the emergency room because no wheelchairs were available upon Plaintiff's arrival at

the hospital. As with his excessive force claims, Plaintiff's § 1983 claims for deliberate indifference to serious medical needs are cognizable under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979). Due Process requires the government to provide appropriate medical care to pretrial detainees. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). A prison official may violate an inmate's constitutional rights by intentionally denying or delaying an inmate's access to medical care for a serious need. *Blackmore v. Kalamazoo Cnty*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An inmate may also raise a viable claim of deliberate indifference to medical needs by showing that an official "knows of and disregards an excessive risk to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"A constitutional claim for denial of medical care has objective and subjective components. The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo Cnty*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer,* 511 U.S. at 834). The subjective component requires prison officials to have "'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). To have a sufficiently culpable state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Regarding the wheelchair incident, the Court concludes, for the reasons discussed above, that no reasonable juror could believe Plaintiff's version of events based upon the videotape evidence. Regarding the braking incident, Defendants have submitted uncontroverted evidence that Plaintiff's foot was bandaged and placed in a splint and ice packs, and Plaintiff has not asserted in either his complaint or his affidavits that Deputy Gothard's conduct resulted in new

or additional injury to his ankle, nor, for that matter has he asserted that Deputy Gothard's
conduct even caused him pain. Similarly, Plaintiff has alleged no injury resulting from
Defendant Gothard's refusal to help Plaintiff get into the van despite Plaintiff's being handcuffed
and injured, and Deputy Gothard's telling Plaintiff that he would have to hop into the emergency
room because no wheelchairs were available upon Plaintiff's arrival at the hospital. To the
extent that Plaintiff intended these allegations to state a claim for inordinate delays in Plaintiff's
receipt of proper medical care, Plaintiff's claim fails because he has not alleged any detrimental
effect resulting from any alleged delay. Moreover, Defendants have submitted uncontroverted
evidence showing that approximately one hour elapsed between the time Plaintiff broke his ankle
in the courtyard and the time he was admitted to the hospital. Motion for Summary Judgment,
Exs. B, T, U, V, W (Doc. 52). Given that Plaintiff's injury was not life-threatening, and in the
absence of any allegations that he suffered additional injury, the Court discerns no delay rising to
the level of a constitutional violation.

Based upon the foregoing, the Court concludes that Plaintiff's § 1983 claims alleging
Fourteenth Amendment due process violations by Deputy Gothard fail as a matter of law.

### ii. Claims against Deputy Ellis

Plaintiff's constitutional claims against Deputy Ellis are similarly infirm. Plaintiff's first
claim against Deputy Ellis alleges that Deputy Ellis used excessive force amounting to
punishment by allegedly running Plaintiff's broken leg into a wall as Plaintiff was being wheeled
to the loading dock to be taken to the hospital. Plaintiff's second claim against Deputy Ellis
alleges that Deputy Ellis exhibited deliberate indifference to a serious medical condition by
causing a motor vehicle accident while Plaintiff, who was a handcuffed and injured, was seated
in the back of the van that Deputy Ellis was driving; by refusing to help the handcuffed and

26

injured Plaintiff get into the van; and by telling Plaintiff that he would have to make his own into

the emergency room because no wheelchairs were available upon Plaintiff's arrival at the

hospital.

### (a) Excessive Force

Defendants contend that Plaintiff's claims arising out of the alleged wheelchair incident

must be dismissed insofar as they allege wrongdoing by Deputy Ellis because Deputy Ellis never

had control over the wheelchair. In his response, Plaintiff does not refute this assertion, and the

affidavits he submitted in opposition to Defendants' motion for summary judgment do not

mention of Deputy Ellis in relation to the wheelchair incident. Accordingly, Plaintiff appears to

have abandoned his claims against Deputy Ellis relating to the wheelchair incident.

### (b) Deliberate Indifference

Deputy Ellis alleges that Deputy Ellis exhibited deliberate indifference to a serious

medical condition by causing a motor vehicle accident while Plaintiff, who was a handcuffed and

injured, was seated in the back of the van that Deputy Ellis was driving; by refusing to help the

handcuffed and injured Plaintiff get into the van; and by telling Plaintiff that he would have to

make it on his own into the emergency room because no wheelchairs were available upon

Plaintiff's arrival at the hospital. As with the braking incident alleged against Deputy Gothard,

Plaintiff has not asserted in either his complaint or his affidavits that Deputy Ellis's conduct

resulted in new or additional injury to his ankle, nor, for that matter has he asserted that Deputy

Ellis's conduct caused him pain. Plaintiff's complaint alleges the following:

> 25. After the Plaintiff was in the van, Deputies Ellis and Gothard locked the
> doors to the van. The Plaintiff was left in handcuffs. There was no room to place
> the Plaintiff's injured ankle. Deputies Ellis and Gothard failed to fasten a seatbelt
> around Plaintiff.
> 26. Deputy Ellis started the van and proceeded rearward. Deputy Ellis crashed
> the vehicle into another van.

27

27. When Deputy Ellis hit the other van, the Plaintiff's foot slammed into the floor of the van.
28. Deputy Ellis then exited the vehicle to examine the damage to the vehicles. Deputy Ellis laughed. Deputy Ellis did not check on the health, safety, or welfare of the Plaintiff.
29. Deputy Ellis and other deputies then took their time examining the vehicle and laughing. Eventually, Deputy Ellis and Deputy Gothard got into the van with the Plaintiff.

Compl. ¶¶ 25-29. In the affidavits filed in response to Defendants' motion for summary judgment, Plaintiff's First Affidavit avers nothing relating to Deputy Ellis. His Second Affidavit repeats the allegations in the complaint but contains no additional allegations concerning any injury he sustained as a result of Deputy Ellis's conduct, nor has he asserted that Deputy Ellis's conduct even caused him pain. Similarly, Plaintiff has alleged no injury resulting from Defendant Ellis's refusal to help Plaintiff get into the van despite Plaintiff's being handcuffed and injured, and Deputy Ellis's telling Plaintiff that he would have to hop into the emergency room because no wheelchairs were available upon Plaintiff's arrival at the hospital. As with his claims against Deputy Gothard, to the extent that Plaintiff intended these allegations to state a claim against Deputy Ellis for inordinate delays in Plaintiff's receipt of proper medical care, Plaintiff's claim fails because he has not alleged any detrimental effect resulting from any alleged delay.

Based upon the foregoing, the Court concludes that Plaintiff's § 1983 claims alleging Fourteenth Amendment due process violations by Deputy Ellis fail as a matter of law.

### iii. Claims against Deputy Firth

In his Complaint, Plaintiff alleges that Deputy Firth and Deputy Gothard tainted Plaintiff's food while he was recovering from his ankle injury. Deputy Gothard admitted in his

28

deposition testimony that he poured milk into Plaintiff's food tray.[9]  Gothard Dep. 32-33.

Deputy Firth testified in his deposition that he did not see Deputy Gothard pour the milk in

Plaintiff's food tray and did not know that anything was wrong with Plaintiff's food until

Plaintiff brought it to his attention and requested a new tray, which Deputy Firth provided.  Firth

Dep. 26-28. In the affidavits Plaintiff filed in response to Defendants' motions for summary

judgment, Plaintiff alleges only that Deputy Gothard tainted his food.  Indeed, Plaintiff's

affidavits do not mention Deputy Firth at all.  Accordingly, he appears to have abandoned his

claim against Deputy Firth.

### iv.  LPN Solis

The factual allegations in Plaintiff's Complaint state a claim against LPN Solis for

deliberate indifference to a serious medical need.  Specifically, Plaintiff alleges that LPN Solis

failed to distribute pain medication to Plaintiff on the schedule prescribed by the physician who

discharged Plaintiff from the hospital after Plaintiff's ankle surgery.  As discussed in relation to

Plaintiff's First Amendment claim , above, Defendants presented uncontroverted objective

evidence that LPN Solis changed the distribution schedule of Plaintiff's Percocet to comply with

the prescription written by the physician who discharged Plaintiff from the hospital; that LPN

Solis informed Plaintiff that he could have his medication every three hours if he requested it;

that he in fact received his medications several times a day every day; or that LPN Solis did not

work again after October 5, 2007 while Plaintiff remained in custody and therefore could not

have refused to give him his medication upon request.  The only counter-evidence Plaintiff

submits is an affidavit stating: "While recovering at Franklin County Correctional Facility II, I

was not given my pain medications as prescribed by my doctor.  Nurse Solis refused to give me

---

[9] As discussed above, Plaintiff's § 1983 claims against Deputy Gothard arising out of this incident were dismissed by the Court on Deputy Gothard's cross-motion for summary judgment.  (Doc. 61).

my medications. I never at any time refused any of my medications." Blevins Second Aff. ¶¶
25, 26, 36. Plaintiff, however, offers no objective evidence that his physician prescribed a
different distribution schedule from the one LPN Solis followed, i.e., every three hours as
needed, nor does he claim that he at any time requested medication and was denied. In sum,
Plaintiff has failed to establish that LPN Solis knew of and disregarded an excessive risk to
Plaintiff's health and thus has failed to establish the subjective component of a deliberate
indifference claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### v. Claims against Franklin County Sheriff Karnes

Plaintiff's Complaint contains no allegations that Defendant Franklin County Sheriff
Karnes was personally involved in any of the events giving rise to this suit. "Government
officials may not be held liable for the unconstitutional conduct of their subordinates under a
theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). "Because
vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each
Government-official defendant, through the official's own individual actions, has violated the
Constitution." *Id.* Given that the record is devoid of any allegations or evidence that Sheriff
Karnes was personally involved in any conduct forming the bases of Plaintiff's Complaint,
Sheriff Karnes is entitled to judgment as a matter of law.

Based upon the foregoing, the Court concludes that each of Plaintiff's §1983 claims
alleging constitutional violations against each Defendant fails as a matter of law. Accordingly,
Defendants' Comprehensive Motion for Summary Judgment is granted insofar as it seeks
judgment on Plaintiff's federal claims.

30

2.    *State Law Claims*

Having dismissed the all claims providing independent federal jurisdiction,[10] this Court

must now determine whether to exercise supplemental jurisdiction over Plaintiff's remaining

state-law claims.  The statutory provisions governing supplemental jurisdiction are set forth at 28

U.S.C. § 1367, which states, in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article III
> of the United States Constitution. . . .
>
> . . .
>
> (c)  The district courts may decline to exercise supplemental jurisdiction
> over a claim under subsection (a) if . . . the district court has dismissed all claims
> over which it has original jurisdiction.

28 U.S.C. 1367(a), (c)(3).  The United States Court of Appeals for the Sixth Circuit explains that

supplemental jurisdiction exists if the following three prerequisites are met: (1) the federal claim

has "substance sufficient to confer subject matter jurisdiction on the court"; (2) the state and

federal claims "derive from a common nucleus of operative fact"; and (3) "the claims [are] such

that plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Aschinger v.*

*Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (citing *United Mine Workers of*

*America v. Gibbs*, 383 U.S. 715, 725 (1966)).

In *Carlsbad Technologies, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866-67 (2009), the

United States Supreme Court emphasized that, once a district court has dismissed every claim

over which it had independent jurisdiction, the decision to exercise supplemental jurisdiction

over a remaining state-law claim is "purely discretionary."  In its most recent treatment of the

subject, the Sixth Circuit recognized that district courts possess "broad discretion" to decide

---

[10] This case presents no issues of diversity jurisdiction, given that all parties are citizens of Ohio.

whether to exercise supplemental jurisdiction over state-law claims that fall within the purview

of Section 1367. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (quoting 28

U.S.C. § 1367(a)).[11]  Indeed, in a concurring opinion in *Carlsbad Technologies*, Justice Breyer

wrote:  "All agree that the law grants the District Court broad discretion to determine whether it

should keep such cases on its docket . . . ." *Carlsbad Techn.,*129 S. Ct. at 1869 (Breyer, J.

concurring).

       In *Gamel*, the Sixth Circuit observed that district courts must engage in a balancing test

involving several factors in determining whether to retain jurisdiction over state-law claims.

*Gamel*, 625 F.3d at 951-52.  If the balance of factors in a removed case weighs against exercising

jurisdiction, remand is the appropriate course of action. *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 357 (1988); *Long v. Bando Mfg. of Am., Inc.,* 201 F.3d 754 (6th Cir. 2000).

       When a district court dismisses all claims over which it had original jurisdiction, the

balance of considerations is likely to weigh in favor of declining to exercise supplemental

jurisdiction. *Gamel*, 625 F.3d 952 (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d

1244, 1254-1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance

of considerations *usually* will point to dismissing the state law claims, or remanding them to state

court if the action was removed") (emphasis added)).  Nevertheless, a number of countervailing

factors may tip the balance toward retaining supplemental jurisdiction. *Id.* (citing *Harper v.

AutoAlliance Intern., Inc.*, 392 F.3d 195, 211-12 (6th Cir. 2004) (upholding district court's

decision to retain supplemental jurisdiction where plaintiff's decision to dismiss federal-law

---

[11] Previous Sixth Circuit cases, decided before *Carlsbad Technologies*, assigned a more constrained role
for a district court's exercise of discretion in determining whether to retain supplemental jurisdiction.
*See, e.g.*, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction
should be exercised *only* in cases where the 'interests of judicial economy and the avoidance of
multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues.'") (quoting
*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 2006) (in turn quoting *Aschinger v.
Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)) (emphasis added).

claims was made for purposes of forum manipulation after case had been on district court's

docket for eleven months; discovery had closed, summary-judgment motions had been filed and

were ripe for disposition, and the district court was familiar with the facts of the case and already

had invested significant time in the litigation)). *See also Taylor v. First of Am. Bank-Wayne*, 973

F.2d 1284, 1287 (6th Cir. 1992) (upholding district court's decision to retain supplemental

jurisdiction where the matter had been on the court's docket for nearly two years; discovery had

closed, and the parties had compiled a voluminous record; plaintiff abandoned his federal claim

only upon the filing of an amended complaint; and the parties had prepared extensive briefs in

support of a summary judgment motion that was ripe for review); *Fossyl v. Milligan*, 317 F.

App'x 473 (6th Cir. 2009) (upholding district court's retention of supplemental jurisdiction

where balance of factors weighed against remand).

The Sixth Circuit has not expressly stated a comprehensive list of factors comprising the

balancing test. An abundance of Sixth Circuit cases, however, discuss the various circumstances

involved in making the supplemental jurisdiction determination. Those cases reveal the

following considerations which lower courts in our circuit should weigh: convenience, comity,

fairness, and judicial economy, *Gamel*, 625 F.3d at 951-52 (citing *Cohill*, 484 U.S. at 350;

*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)); whether the

plaintiff has used "manipulative tactics" to secure state forum, *Harper v. AutoAlliance Intern.,*

*Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (citing *Cohill*, 484 U.S. at 350); and the difficulty or

novelty of the state law issues, *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047, 1055

n. 11 (6th Cir. 1986).[12]  The factors of judicial economy, fairness, and comity are further

---

[12] This consideration is now covered separately by 28 U.S.C. § 1367(c)(1) ("The district courts may
decline to exercise supplemental jurisdiction over a claim in subsection (a) if . . . the claim raises a novel
or complex issue of State law.")

33

informed by the following more specific considerations: whether the district court should avoid

needless state law decisions, *Landefeld*, 994 F.2d at 1182; *Province*, 787 F.2d at 1055

("'Needless decisions of state law should be avoided both as a matter of comity and to promote

justice between the parties, by procuring for them a surer-footed reading of applicable law.'")

(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); whether the district court, in

its disposition of federal-law claim, resolved a related state-law issue, *Experimental Holdings,

Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007)); whether similar predicate factual findings

are necessary to resolve both the state and the federal claims, *Aschinger v. Columbus Showcase

Co.,* 934 F.2d 1402, 1412 (6th Cir. 1991) (citing *Province*, 787 F.2d at 1055); whether the

district court has expended significant time and resources, *id.*, 934 F.2d at 1413; whether

dismissal or remand will result in duplicative litigation, *Province*, 787 F.2d at 1054; *Landefeld*,

994 F.2d at1182; whether the matter has been on the district court's docket for a significant time,

*Harper v. AutoAlliance, Intern., Inc.*, 392 F.3d 195, 211 (6th Cir. 2004); *Taylor v. First Am.

Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992); whether the parties have completed

discovery, *Aschinger*, 934 F.2d at 1413; *Harper*, 392 F.3d at 211; *Taylor*, 973 F.2d at 1287;

whether plaintiff has abandoned all federal claims at a late stage of the proceedings, *Harper*, 392

F.3d at 211;*Taylor*, 973 F.2d at 1287; whether the district court has gained significant familiarity

with the case through previous substantive rulings, *Harper*, 392 F.3d at 211; and whether a

summary judgment motion has been filed and is ripe for review and, if so, how extensively it has

been briefed, *Taylor*, 973 F.2d at 1287.

     In this action, the Court concludes that the factors on balance weigh in favor of remand to

the state court. Some factors suggest that exercising supplemental jurisdiction would be

appropriate. The case has been on this Court's docket for some time, and a motion for summary

judgment has been fully briefed and is ripe for review. However, the record compiled by the parties—though thorough—is not particularly voluminous, and although the parties have undertaken and completed discovery, they have done so without the need of Court intervention. In addition, the Court has previously issued but one substantive ruling on the parties' claims and has not reached the merits of any state-law claims. Furthermore, the need to avoid duplicative litigation does not appear to be implicated. On remand, the parties will presumably resume litigating their claims in state court at the same procedural juncture where they left off in federal court. In addition, all of the parties, witnesses and evidence are located in Columbus, Ohio. Thus, the state court is at least as convenient as the federal forum. Moreover, while it is true that the most of the federal claims survived the earliest stages of litigation in this Court, their disposition at a later stage was prompted by Defendants' motion for summary judgment; Plaintiffs did not abandon their federal claim in an effort to manipulate the forum.

Having considered the interests of comity, fairness, convenience, and judicial economy, as guided by the additional factors provided by the Sixth Circuit caselaw discussed above, the Court concludes that this action should be remanded to state court.

## IV.    **Conclusion**

For the reasons discussed above, the Court hereby **DENIES** Plaintiff's Combined Motion for Sanctions and Motion to Strike Portions of Motion for Summary Judgment and **GRANTS** Defendant's Comprehensive Motion for Summary Judgment as to Plaintiff's federal claims arising under 42 U.S.C. § 1983. The remaining claims in this case are **REMANDED** to the Court of Common Pleas for Franklin County, Ohio for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

3 - 16 - 2011
_____
**DATED**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**